**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| **EUGENIO MONTOYA-CARRILLO,** § | |
| Petitioner, § | |
| § | |
| v. § | **Civil Action No. 1:16-167** |
| § | **Criminal No. B:15-1069-1** |
| **UNITED STATES OF AMERICA,** § | |
| Respondent. § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On July 5, 2016, Petitioner Eugenio Montoya-Carrillo filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.[1] Dkt. No. 1. On October 6, 2016, the United States timely responded to the petition. Dkt. No. 30.

After reviewing the record and the relevant case law, it is recommended that Montoya-Carrillo's petition be denied because it is legally and substantively meritless.

### I. Procedural and Factual Background

On December 1, 2015, a federal grand jury – sitting in Brownsville, Texas, – indicted Montoya-Carrillo for illegally re-entering the United States after having been previously deported[2], a violation of 8 U.S.C. §§1326(a) and 1326(b). U.S. v. Montoya-Carrillo, Criminal No. 1:15-1069-1, Dkt. No. 6 (hereinafter "CR").

**A. Rearraignment**

On December 30, 2015, Montoya-Carrillo appeared before the Magistrate Judge and entered a guilty plea – without a written plea agreement – to illegally re-entering the United

---

[1] Montoya-Carrillo also filed a request for the appointment of counsel, which was denied by this Court. Dkt. No. 17. Montoya-Carrillo appealed that denial to the United States Court of Appeals for the Fifth Circuit. Dkt. No. 21. The Fifth Circuit dismissed the appeal for lack of jurisdiction. Dkt. No. 32.

[2] While the indictment alleged that Montoya-Carrillo had been convicted of a felony, that prior felony conviction is a sentencing factor, not an element of the offense under 8 U.S.C. § 1326. U.S. v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007). Accordingly, the inclusion of the allegation of a prior felony was "mere surplusage." U.S. v. Granados, 355 Fed. App'x. 823 (5th Cir. 2009)(unpubl.).

1

States. CR Dkt. No. 14.

On that same day, the Magistrate Judge issued a report and recommendation that the District Judge accept Montoya-Carrillo's plea of guilty. CR Dkt. No. 14.

### B. Sentencing & Direct Appeal

In the final presentence report ("PSR"), Montoya-Carrillo was assessed a base offense level of eight for illegally re-entering the United States. CR Dkt. No. 18, pp. 4-5. Montoya-Carrillo was also assessed a four-level enhancement, because he had previously been convicted of the felony offense of being an alien unlawfully found in the U.S. Id. Montoya-Carrillo received a two-level reduction for acceptance of responsibility. Id, p. 5. Thus, Montoya-Carrillo was assessed a total offense level of 10.

Regarding his criminal history, Montoya-Carrillo had nine[3] adult criminal convictions and was assessed 16 criminal history points. CR Dkt. No. 18, pp. 6-10. He was assessed an additional two points because he was on supervised release at the time that he committed the instant offense. Id. He was assessed 18 total criminal history points, resulting in a criminal history category of VI. Id. Based upon Montoya-Carrillo's offense level of 10 and criminal history category of VI, the presentence report identified a guideline sentencing range of 24 to 30 months of imprisonment. Id., p. 14.

On February 22, 2016, the District Judge adopted the report and recommendation, accepting Montoya-Carrillo's guilty plea. CR Dkt. No. 17.

On April 4, 2016, the Court held the sentencing hearing. CR Dkt. No. 35. At that hearing, Montoya-Carrillo's counsel sought a downward departure, based on Montoya-Carrillo's personal circumstances of caring for his family. Id., pp. 11-14. The Court denied the motion. Id, p. 14.

The District Court sentenced Montoya-Carrillo to 24 months of imprisonment; three years of supervised release; and a $100 special assessment fee, the last of which was ordered remitted. CR Dkt. No. 39, pp. 14-16. The judgment was entered on April 8, 2016. CR Dkt. No. 26.

---

[3] Montoya-Carrillo had three operating while intoxicated convictions and six immigration-related convictions.

Neither the District Court docket, nor the Fifth Circuit docket, reflect the filing of a direct appeal. A notice of appeal must be filed within fourteen (14) days from the entry of judgment. See FED. R. APP. P. 4(b)(1)(A), 26(a)(2). Therefore, Montoya-Carrillo's deadline for filing a notice of direct appeal passed on April 22, 2016. Id.

### C. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255

On July 5, 2016, Montoya-Carrillo timely filed a motion pursuant to 28 U.S.C. § 2255, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1. In his motion, Montoya-Carrillo raised a number of claims, which the Court restates as the following: (1) his guilty plea was involuntary because his lawyer was ineffective for failing to collaterally attack his prior deportation order; (2) he lacked the mens rea to commit the underlying offense; (3) counsel was ineffective for failing to seek a downward departure for cultural assimilation; and, (4) he should not have been sentenced to supervised release. Dkt. Nos. 1, 2.

On October 6, 2016, the United States filed a response, in which it asserted that Montoya-Carrillo's petition should be denied because it is meritless. Dkt. No. 30.

## II. Applicable Law

### A. Section 2255

Montoya-Carrillo seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a petitioner exhausts or waives his direct appeal, the Court is entitled to presume that he was fairly convicted. U.S. v. Frady, 456 U.S. 152, 164 (1982); U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). A petitioner who seeks to challenge a final conviction by

3

collateral attack, can do so on constitutional or jurisdictional grounds. 28 U.S.C. § 2255(a); U.S. v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id. To prove that counsel's performance was deficient, a petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Moreover, a defendant is "entitled to effective assistance of counsel at all stages of his criminal trial, including the sentencing phase." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997). A defendant may show prejudice at sentencing if counsel's ineffective assistance resulted in any additional incarceration. Glover v. U.S., 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

### III. Analysis

A court may entertain and decide a § 2255 motion without requiring the production of the prisoner at a hearing. 28 U.S.C. § 2255. Further, a district court may deny a § 2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." U.S. v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). Despite Montoya-Carrillo's claim to the contrary,[4] Dkt. No. 31, the

---

[4] Montoya-Carrillo argues that this motion cannot be decided without a hearing. The Court's analysis establishes that there are no factual issues in this case which require an evidentiary

4

record in this case satisfies this requirement, for which reason the motion can be decided without a hearing.

In analyzing Montoya-Carrillo's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). "While we read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012). Irrespective of the standard, neither the record – nor the law – support Montoya-Carrillo's claim.

### A. Prior Deportation Order

Montoya-Carrillo asserts that his guilty plea was involuntary and that his attorney was ineffective because his attorney never collaterally attacked his prior deportation order. This claim is meritless.

Within established parameters, an alien may collaterally challenge a prior deportation or removal order, when the prior order is used to prove an element of a criminal offense. U.S. v. Mendoza-Lopez, 481 U.S. 828 (1987). "In order successfully to collaterally attack a deportation order in a § 1326 prosecution, the alien must show (1) that the deportation hearing was fundamentally unfair, (2) that the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation, and (3) the procedural deficiencies caused him actual prejudice." U.S. v. Benitez-Villafuerte, 186 F.3d 651, 658 (5th Cir. 1999).

Montoya-Carrillo has not shown any of these elements. He has not shown that he was unable to challenge his removal via judicial review of his immigration proceedings or that he had a valid defense to deportation.[5] What is clear, and supports the propriety of his prior

---

hearing.

[5] Montoya-Carrillo has been deported on at least five different occasions. CR Dkt. No. 18, pp. 5-10. He has not specified which of those five deportation orders was legally infirm. "The law is clearly established that a showing of actual prejudice is required to succeed in such a collateral attack," on a prior deportation order. U.S. v. Benitez-Villafuerte, 186 F.3d 651, 658 (5th Cir. 1999).

deportation, is that Montoya-Carrillo had no legal status to be within the United States and had several prior immigration-related convictions. CR Dkt. No. 18, p. 2. These facts are unchallenged. Counsel is not ineffective for failing to raise meritless arguments. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990) ("counsel is not required to make futile motions or objections.").

This claim is meritless, for which reason it should be denied.

### B. Mens Rea

Montoya-Carrillo asserts that he lacked the mens rea to commit the underlying offense; he claims that he returned to the U.S. to support and care for his children after his wife's death, which constituted "rare and exceptional circumstances." Dkt. No. 2, p. 2. While this fact may show why Montoya-Carrillo committed the offense, it does not affect the legality of his actions.

With respect to illegal re-entry cases, "it is sufficient that the government demonstrates that a previously deported alien knowingly intended to reenter the United States—general intent with respect to the actus reas of the crime." U.S. v. Morales-Palacios, 369 F.3d 442, 449 (5th Cir. 2004). Thus, the Government merely had to prove that Montoya-Carrillo knew that he was re-entering the United States and that Montoya-Carrillo did not have a legal right to enter the United States. Id.

At his re-arraignment, Montoya-Carrillo admitted under oath that he knowingly crossed the river into the United States and that he knew that he did not have permission to enter into the United States. CR Dkt. No. 33, pp. 60-62. Thus, Montoya-Carrillo admitted to the factual predicates necessary to establish the general intent to commit the crime. Morales-Palacios, 369 F.3d at 449. This claim is meritless and should be denied.

### C. Cultural Assimilation

Montoya-Carrillo also asserts that his counsel was ineffective for failing to seek a

---

Montoya-Carrillo points to no evidence in support of his challenge to his prior deportation. The general allegation that a prior deportation was not effected in accordance with the law, is an insufficient basis for relief. U.S. v. Rodriguez-Perez, 428 F. App'x 324, 328 (5th Cir. 2011).

downward departure for cultural assimilation. As with the other claims, this one is also meritless.

The Sentencing Guidelines allow a downward departure based upon cultural assimilation for defendants convicted of illegal re-entry. U.S. S.G. § 2L1.2 cmt. n. 8. The commentary states that the departure should only be considered in cases where the defendant formed cultural ties "from having resided continuously in the United States from childhood[;]" those ties were the reason for the illegal re-entry; and the departure "is not likely to increase the risk to the public from further crimes of the defendant." Id.

The Court notes that a downward departure for cultural assimilation is extraordinary and not typically granted. U.S. v. Rodriguez-Montelongo, 263 F.3d 429, 434 (5th Cir. 2001) (cultural assimilation downward departure is warranted only in circumstances that are atypical or extraordinary). A court may consider a defendant's cultural assimilation, but is not required to give it "dispositive weight." U.S. v. Lopez–Velasquez, 526 F.3d 804, 807 (5th Cir. 2008).

Montoya-Carrillo's personal history is not consistent with the criteria listed in the commentary for a cultural assimilation downward departure. First, the presentence report shows that Montoya-Carrillo was born in 1982 and did not enter the United States until 1999, when he was 17 years old. CR Dkt. No. 18, pp. 2, 12. Second, based upon his prior removals from the United States – in 2006, 2007, 2009 and 2012 – it is clear that he has not resided "continuously in the United States from childhood." U.S. S.G. § 2L1.2 cmt. n. 8; CR Dkt. No. 18, pp. 5-9. Finally, Montoya-Carrillo's criminal history includes three prior driving while intoxicated convictions and six immigration-related convictions. CR Dkt. No. 18, pp. 5-8.

In sum, Montoya-Carrillo was not continuously raised in the United States; has an extensive criminal history, over an extended period of time; and never went to school in the United States. These factors – under any conceivable standard – disqualify Montoya-Carrillo from eligibility for a downward departure based upon cultural assimilation. As such, he was not prejudiced by his counsel's failure to file such a motion. Strickland, 466 U.S. at 694 (the

absence of prejudice precludes relief).  Because Montoya-Carrillo would not have qualified for the downward departure, his counsel was not ineffective for failing to file an unsupported motion. U.S. v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").  This claim is meritless and should be denied.

### D. Supervised Release

Montoya-Carrillo asserts that he should not have been sentenced to a term of supervised release at the conclusion of his incarceration.  This claim is unsupported by both the law and the facts.

"The district court may impose upon a defendant a term of supervised release as part of its sentencing decision," and the decision to do so is within the Court's discretion. U.S. v. Rodriguez, 558 F.3d 408, 411 (5th Cir. 2009).  The decision to impose supervised release will be upheld unless the Court's decision was "substantively unreasonable." Id.  For § 1326 convictions, "supervised release should not be imposed absent a determination that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S. v. Dominguez-Alvarado, 695 F.3d 324, 329 (5th Cir. 2012).

In this case, the Court was clearly concerned with deterring Montoya-Carrillo from re-entering the United States yet again. See CR Dkt. No. 35, pp. 9-10 (District judge noting that the instant case was the third time he had sentenced Montoya-Carrillo for illegal re-entry and that "the more [Montoya-Carrillo] comes back, the more time he's looking at."). "Adequate deterrence" is a "valid consideration[] in determining whether to impose a term of supervised release." U.S. v. Medina-Torres, 370 F. App'x 554, 555 (5th Cir. 2010).  Thus, the Court's decision to impose supervised release was not substantively unreasonable. Accordingly, this claim is also meritless, and should be denied.

### IV. Recommendation

WHEREFORE it is **RECOMMENDED** that the Petitioner Eugenio Montoya-Carrillo's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be **DENIED**.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Montoya-Carrillo's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Montoya-Carrillo's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded

by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on January 9, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge